*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1©.*

### File Name: 12b0007n.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re:   JOSEPH L. BAER,            )
                                    )     No. 11-8062
          Debtor.                   )
_____   )

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky, Covington Division.
No. 10-21096, Adv. Proc. No. 10-02062.

Submitted: April 23, 2012

Decided and Filed: June 22, 2012

Before: McIVOR, PRESTON, SHEA-STONUM, Bankruptcy Appellate Panel Judges.

---

### COUNSEL

**ON BRIEF:** Elizabeth Brown Alphin, MAPOTHER & MAPOTHER P.S.C., Louisville, Kentucky,
for Appellee. Joseph Lee Baer, Florence Kentucky, pro se.

---

### OPINION

---

MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge. Joseph L. Baer, the *pro
se* Chapter 7 debtor, appeals an order of the bankruptcy court finding: (1) the debtor failed to prove
actual damages caused by a secured creditor's post-petition repossession of a Toyota Camry and (2)
the creditor's actions did not violate the discharge injunction.

# I.   ISSUES ON APPEAL

The issues presented by this appeal are whether the bankruptcy court erred in: (1) not extending the pre-trial discovery deadlines; (2) not awarding debtor damages pursuant to 11 U.S.C. § 362(k); (3) not finding that HSBC Auto had violated the discharge injunction; and (4) not granting debtor's post-trial motions for a new trial, for return of property and for temporary injunctive relief and a temporary restraining order.

For the reasons that follow, we affirm (1) the bankruptcy court's April 25, 2011 order denying the debtor's motion to extend the discovery deadlines without prejudice; (2) the bankruptcy court's August 22, 2011 judgment dismissing debtor's claim for violation of the discharge injunction pursuant to 11 U.S.C. § 524 and finding that while HSBC wilfully violated the automatic stay pursuant to 11 U.S.C. § 362(k), debtor was not entitled to damages; and (3) the bankruptcy court's September 2, 2011 order denying the debtor's motions for a new trial, for return of property, and for temporary injunctive relief and a temporary restraining order.

HSBC Auto also asserts that the debtor does not have standing to bring this appeal.

# II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel and no party has timely elected to have this appeal heard by the district court.  28 U.S.C. § 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

2

All of the orders challenged by appellant are final, appealable orders. Pre-trial orders relating to discovery become final orders when the trial court enters final judgment on all claims. *In re Gray*, 447 B.R. 524, 531 (E.D. Mich. 2011). Because the bankruptcy court in this appeal has entered final judgment on the debtor's complaint, the court's denial of debtor's motion to extend the discovery deadlines is now final and ripe for appeal. The bankruptcy court's August 22, 2011 order which determined the issues of willfulness and sanctions is also final for purposes of appeal. *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R. 839, 843 (B.A.P. 6th Cir.1998) (citing *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re U.S. Abatement Corp.)*, 39 F.3d 563, 567 (5th Cir. 1994) (a contempt order is not final until the court enters judgment on sanctions)). The bankruptcy court's denial of debtor's motion for contempt for violation of the discharge injunction is also a final, appealable order. *In re Glaspie*, 410 B.R. 261, 266 (E.D. Mich. 2007). The bankruptcy court's order denying debtor's motion for a new trial under Federal Rule of Civil Procedure 59 is a final order for purposes of appeal. *Dayton Title Agency, Inc. v. The White Family Cos., Inc. (In re Dayton Title Agency, Inc.)*, 337 B.R. 729 (B.A.P. 6th Cir. 2006) (unpub. table decision).

Although not specifically brought pursuant to Federal Rules of Civil Procedure 59, the debtor's post-trial motions for return of property and for temporary injunctive relief and a temporary restraining order are essentially requests to alter or amend and/or reconsider previous orders from the bankruptcy court. Debtor originally requested return of the vehicle in a motion for temporary injunctive relief and temporary restraining order filed contemporaneously with his complaint. The bankruptcy court denied that motion on March 25, 2011. Debtor originally sought to enjoin Appellee from disposing of the collateral in his complaint. In issuing its August 22, 2011 order, the bankruptcy court denied that requested relief. Orders denying a Rule 59(a) motion to alter or amend a judgment are final for purposes of appeal. *Brock v. Branch Banking & Trust Co. (In re Johnson)*, 380 B.R. 455, 458 (B.A.P. 6th Cir. 2007).

The decision to grant or deny a request for an extension of discovery deadlines is within the bankruptcy court's sound discretion and is reviewed for an abuse thereof. *Woods v. McGuire*, 954 F.2d 388, 391 (6th Cir. 1992). Orders limiting discovery will only be reversed if they result in

3

"substantial prejudice" to the non-prevailing party. *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994) (citation omitted). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL (In re Murray, Inc.)*, 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (citations omitted); *See also Mayor of Balt., Md. v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) ("An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.'"). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 608 (6th Cir. 2000).

Rulings on Rule 59 motions to alter or amend or for a new trial are also reviewed for an abuse of discretion. *Hamerly v. Fifth Third Mortg. Co. (In re J & M Salupo Dev. Co.)*, 388 B.R. 795, 800 (B.A.P. 6th Cir. 2008) (citing *Pequeño v. Schmidt (In re Pequeño)*, 240 Fed. App'x 634, 636 (5th Cir. 2007)).

A bankruptcy court's determination that a party has willfully violated the automatic stay presents a mixed question of law and fact. *In re Perrin*, 361 B.R. 853 (B.A.P. 6th Cir. 2007). The decision that an award of damages is not warranted where debtor fails to prove actual damages is a question of statutory interpretation and is reviewed *de novo*. *Id.* at 855. "De novo means that the appellate court determines the law independently of the trial court's determination." *Id.* The determination that a party has willfully violated the automatic stay is a question of fact reviewed for clear error. *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 688 (B.A.P. 6th Cir. 1999).

A bankruptcy court's application and interpretation of 11 U.S.C. § 524 also poses a mixed question of law and fact. *Ford Motor Credit Co. LLC v. Morton (In re Morton)*, 410 B.R. 556, 559 (B.A.P. 6th Cir. 2009). The court's interpretation of § 524 is reviewed *de novo*. *Id.* The court's

4

determination that HSBC Auto did not violate the discharge injunction is reviewed for an abuse of discretion. *Rajotte v. Carter (In re Rajotte)*, 81 Fed. App'x 29 (6th Cir. 2003).

## III.  FACTS

On April 10, 2008, Joseph Lee Baer (hereinafter "Debtor"), purchased a 2009 Toyota Camry from Lakeside Toyota of Metarie, Louisiana, and financed the purchase price of approximately $26,000.  The lien was perfected by notation on the certificate of title on May 21, 2008.

On April 21, 2010, Debtor filed his no asset chapter 7 petition for bankruptcy relief.[1]  The Debtor listed the Camry on Schedule C and noted the value of his claimed exemption in the vehicle as $0.  On Schedule D, Debtor showed HSBC Auto ("Appellee") holding a "statutory lien" on the Camry in the amount of $23,557 with an unsecured portion of $3,557.  Debtor listed total assets of $22,600, $20,000 of which represented the Camry's value, and total liabilities of $576,956.60.  Debtor's § 341 meeting of creditors was set for June 16, 2010.

Debtor's Statement of Intention indicated that he proposed to retain the Camry by entering into a reaffirmation agreement with Appellee.  Nothing in the Statement of Intention indicated Debtor intended to reaffirm the debt on the original contract terms.  Debtor, however, never entered into a reaffirmation agreement for the debt secured by the Camry.  Instead, on April 26, 2010, he filed a motion to redeem the vehicle from the Appellee.[2]  He sought to redeem the vehicle for

---

[1]At the time of filing, Debtor was represented by counsel, Alexander F. Edmondson; however, Edmondson filed a motion to withdraw as Debtor's counsel on May 17, 2010. Debtor filed a motion to terminate Edmondson as his attorney on May 18, 2010. On June 8, 2010, the bankruptcy court entered an order granting Edmondson's motion to withdraw.

[2]In the bankruptcy court's August 22, 2011 memorandum opinion granting in part and denying in part Debtor's complaint, the court stated that Debtor "testified the motion to redeem was filed without his consent by his attorney." The motion to redeem was filed April 26, 2010. The order granting the motion was entered May 17, 2010. That same day, the debtor's attorney filed a motion to withdraw, which was granted by the court on June 8, 2010. Debtor stated he terminated his attorney because of his attorney's insistence on filing the motion to redeem.

$14,000. The bankruptcy court granted his motion on May 17, 2010 ("Redemption Order"). The Redemption Order required Debtor to remit the entire $14,000 in a lump sum to Appellee within forty-five days of entry of the order or to surrender the vehicle. The Redemption Order did not, however, provide that the automatic stay would be modified in the event Debtor did not comply with its terms. Debtor failed to remit the lump sum payment or to surrender the Camry to Appellee within the applicable time limit.

Debtor received his chapter 7 discharge on October 20, 2010. The Chapter 7 Trustee's Report of No Distribution was entered on the docket as a minute entry only on November 8, 2010. According to this report, the trustee abandoned assets in the amount of $20,000 with the remaining $2,600 in assets being exempted by the Debtor. On November 3, 2010, Appellee repossessed the Camry.

On November 19, 2010, Debtor filed an adversary complaint against Appellee in which he alleged that Appellee had knowingly and willfully violated the discharge injunction and "defaulted on an out of court confidential settlement agreement" when Appellee repossessed the Camry. In his prayer for relief, Debtor sought an injunction against Appellee prohibiting it from seizing and/or disposing of the Camry, contacting Debtor or Debtor's family and coming within 100 yards of Debtor, Debtor's family and Debtor's house. Debtor also asked the bankruptcy court to set the monthly payment on the Camry at $577 until such time as the debt was paid in full. Lastly, Debtor sought damages against Appellee for its violation of the discharge injunction. Debtor did not specify the amount of damages he was seeking, but he did ask for all court costs and, despite his *pro se* status, attorney's fees. Debtor also sought punitive damages in an unspecified amount.

The details of the "out of court confidential settlement agreement" are unclear. In his complaint, Debtor alleged that he entered into an oral agreement with Appellee whereby he agreed to make several large payments over time to cure the deficiency on his account. The terms of this agreement apparently were never reduced to writing. Debtor never set forth the total amount of payments he made under this agreement. Appellee admitted on several occasions that Debtor had

6

made alternative payment arrangements for the Camry and that Appellee had accepted these payments; however, Appellee disputed the total amount of the payments made under the agreement.

Contemporaneous with the filing of the original complaint, Debtor filed a Motion for Temporary Injunctive Relief and Temporary Restraining Order and a Rule to Show Cause in which he restated the allegations in his complaint and requested the same remedies identified in the complaint's prayer for relief along with one additional request:  immediate return of the Camry.

On December 22, 2010, Appellee filed a motion to dismiss Debtor's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Appellee alleged that, because Debtor did not act on his stated intention of reaffirmation within 30 days of the first date set for the meeting of creditors, the stay automatically terminated on the 31st day by virtue of 11 U.S.C. § 362(h)(1).  As a result, Appellee alleged that the Camry was no longer property of the estate as of the 31st day and the court no longer had subject matter jurisdiction over it.  In addition, Appellee argued that its lien rights survived discharge and, by taking possession of the Camry, Appellee was only exercising its *in rem* rights in the vehicle.  Because it took no steps to enforce Debtor's personal liability on the debt, Appellee argued that the repossession did not violate the discharge injunction.  The bankruptcy court conducted a hearing on Appellee's motion to dismiss on February 15, 2011, at which time it denied the motion.

On February 16, 2011, the bankruptcy court issued the first scheduling order for Debtor's complaint.  The court gave the parties until April 18, 2011, to complete discovery and until June 3, 2011, to exchange copies of exhibits.  Exhibits not objected to by June 15, 2011, would be admitted into evidence.  The court set the trial for June 30, 2011.

On March 22, 2011, the bankruptcy court heard Debtor's Motion for Temporary Injunctive Relief and Temporary Restraining Order and on Debtor's Rule to Show Cause.  At the conclusion of the March 22, 2011 hearing, the court recognized that Debtor's complaint had been pending for

some time and that there did not appear to be any significant factual dispute. As a result, the court entered an amended trial order on March 23, 2011, which expedited the trial date from June 30, 2011, to May 26, 2011. The court did not alter the discovery deadline of April 18, 2011, but did expedite the deadline for exchange of exhibits from June 3, 2011, until April 29, 2011, and the objection date for exhibits from June 15, 2011 to May 11, 2011. In addition, the bankruptcy court denied the motion for temporary injunctive relief in an order entered on March 25, 2011.

On April 18, 2011, Debtor filed a motion to extend the discovery deadline asserting that Appellee's counsel had not timely responded to his discovery requests. Debtor did not, however, set forth any details or discussion about which particular requests Appellee had failed to answer. The bankruptcy court issued an order on April 25, 2011, denying Debtor's motion to extend the discovery deadlines without prejudice, noting that Debtor failed to identify any discovery requests that had not been responded to by Appellee.

Appellee filed a motion for summary judgment on April 25, 2011, in which it restated its arguments from its motion to dismiss with respect to 11 U.S.C. § 362(h)(1). In analyzing Appellee's motion for summary judgment, the bankruptcy court looked to §§ 362(h)(1) and 521(a)(2) and agreed that a debtor is required to perform his stated intention within at least thirty days after the first date set for the meeting of creditors. The court also agreed that if a debtor fails to comply, the automatic stay terminates and any acts taken after that termination do not violate § 362. The bankruptcy court disagreed, however, that the stay in this particular case terminated automatically on the 31st day. The court held that its May 17, 2010 order granting Debtor's motion to redeem had the effect of amending Debtor's original statement of intention as provided for in § 362(h)(1)(B). Because the Debtor filed his motion to redeem within the applicable time limits and made efforts to work out a payment arrangement with Appellee, the court concluded that Debtor "took steps as to redeem the vehicle sufficient to satisfy the requirements in § 521(a)(2)(B) and § 362(h)(1)(B)." (May 12, 2011 Mem. Op. at 4). Based on all of these facts, the bankruptcy court determined that the automatic stay had not terminated pursuant to § 362(h)(1).

The bankruptcy court further reasoned that, because Appellee never filed a motion for relief from the automatic stay pursuant to § 362(d) and because "the 'Trustee's Report of No Distribution' does not constitute abandonment," the automatic stay was in effect at the time Appellee repossessed the Camry. (May 12, 2011 Mem. Op. at 5). The bankruptcy court determined it was unnecessary to address Appellee's arguments with respect to the discharge injunction violation. The court, therefore, denied Appellee's motion for summary judgment.[3]

In addition to denying Appellee's summary judgment motion, the May 12, 2011 bankruptcy court order also struck the May 26, 2011 trial on Debtor's complaint and all corresponding pretrial deadlines. At the time these dates were stricken, the only remaining deadline was the May 13, 2011 deadline for submitting exhibit notebooks to the court. The court set a pretrial conference in the matter for May 26, 2011. At that conference, the Debtor orally requested an extension of the discovery deadlines. The bankruptcy court denied Debtor's request, but told him that it was "not limit[ing] [his] right to subpoena witnesses to trial." (May 26, 2011 Tr. of Hr'g at 8). The court then set trial for July 28, 2011.

Appellee timely submitted an exhibit notebook to the court, but Debtor failed to put any exhibits into the record in accordance with the pre-trial scheduling orders. At the trial, Debtor attempted to introduce an exhibit notebook which included some of Appellee's exhibits as well as some additional exhibits Debtor wanted to submit into evidence. The bankruptcy court informed Debtor that, because he failed to comply with the court's pre-trial scheduling order, he would not be allowed to introduce any exhibits into the record. The only exhibits the court allowed him to use at the trial were the exhibits introduced by Appellee in its exhibit notebook.

The only proof offered by Debtor at the July 28, 2011 trial was testimony from himself and his domestic partner, Anthony Wiley ("Wiley"). Debtor offered no proof about the amount of payments he had made under the out of court agreement with Appellee regarding the arrears on the

---

[3]On May 26, 2011, Appellee appealed the order denying its motion for summary judgment. BAP Case No. 11-8040. The BAP dismissed that appeal as interlocutory on September 19, 2011.

Camry nor did he submit any evidence of damages suffered by virtue of the alleged violation of the stay. Although Debtor asserted that he incurred the transportation costs after the repossession, and Wiley testified that he had to rent cars on several occasions and had to rely on friends and family for transportation, Debtor did not submit any receipts for these costs. In fact, Debtor never even provided an estimate of these costs to the court. Wiley simply testified that the expense was quite substantial. (July 28, 2011 Tr. of Hr'g at 28).

On August 22, 2011, the bankruptcy court entered judgment in favor of Debtor on his claim that Appellee willfully violated the automatic stay pursuant to § 362(k); however, because Debtor failed to present any proof of his damages, the court declined to award any recovery to Debtor. The court also dismissed Debtor's claim that Appellee violated the discharge injunction and entered judgment in favor of Appellee as to that count.

The bankruptcy court began its analysis of Debtor's complaint by reviewing his request that the court enforce the agreement with Appellee by ordering Appellee to return the Camry to him. The bankruptcy court concluded that, although the evidence demonstrated that the parties had entered into some type of agreement, the terms of the agreement were unclear. There was no proof as to the amount of payments due, the due date for any such payments, or what the consequences of defaulting on the payments were. Kentucky law requires an agreement to "contain definite and certain terms setting forth promises of performance to be rendered by each party" in order for it to be legally enforceable. The terms of the agreement between these parties were so vague, the court concluded that it could not be enforced. (Aug. 22, 2011 Mem. Op. at 5). The court went on to state that, even if the parties had been able to prove the essential terms of their agreement, it would be unenforceable in the bankruptcy arena because it did not comply with § 524 of the Bankruptcy Code.

Turning to Appellee's alleged willful violation of the automatic stay, the court concluded that Appellee undisputedly knew of the bankruptcy filing at the time it repossessed the Camry. Wiley testified that he told the repossession agent that Debtor had filed for bankruptcy relief. Appellee did not dispute this. Instead, Appellee argued that it acted in good faith in relying on its conclusion that

the automatic stay had terminated pursuant to § 362(h)(1) prior to the repossession. The court held that this mistaken belief as to the termination was not a defense to a § 362(k) action. Because the facts and evidence demonstrated that Appellee knew of the bankruptcy at the time of the repossession and intentionally repossessed the Camry, the court determined that Appellee's violation was willful.

Despite this conclusion, the court determined that Debtor was not entitled to any damages. Based on his *pro se* status, the only damages available for recovery to Debtor would be the expenses he incurred in arranging for alternate transportation and any costs incurred in the course of the adversary proceeding. Because Debtor presented no evidence regarding these expenses, the court concluded it could not award Debtor any damages.

The court also concluded that Debtor was not entitled to an award of punitive damages because there was no evidence that Appellee's repossession was the result of any malicious, vindictive or egregious behavior. Instead, Appellee mistakenly thought the automatic stay was not in effect at the time it repossessed the Camry.

Finally, the court determined that Debtor was not entitled to return of the Camry because the vehicle was still property of the estate. Although Debtor listed the Camry on Schedule C of his petition as exempt, he listed the value of the claimed exemption as $0. The bankruptcy court concluded that "the Plaintiff has no ownership interest independent of the estate that entitles him to possession of the Vehicle until the Vehicle ceases to be property of the estate." (Aug. 22, 2011 Mem. Op. at 8).

Addressing Debtor's claim that Appellee had also violated the discharge injunction, the court concluded that Debtor could not prevail for two reasons. First, the court stated there is no private cause of action for violation of the discharge injunction. Secondly, the court stated that because a creditor's lien rights survive bankruptcy and because there was no evidence that Appellee attempted to enforce any personal liability against Debtor, the repossession was only an attempt to enforce

11

Appellee's *in rem* rights against the car. Therefore, the court concluded that the repossession did not violate Debtor's discharge order.

The day after the court issued its decision, Debtor filed a motion for a new trial and a motion for return of property. On August 25, 2011, Debtor filed an amended motion for a new trial and an emergency motion for temporary injunctive relief and temporary restraining order. In his motion for a new trial, Debtor alleged that the court erred in not awarding him damages or attorney's fees. Although he was a *pro se* debtor at all times in the adversary proceeding, Debtor asserted that he incurred attorney's fees from two "Attorney advisors."

> At the time of trial, damages and attorney's fees were still ongoing (and still occurring) with a calculated total of over $20,000. Plaintiff may be Pro Se but does have the Constitutional right to have counsel even in an advisory role. Thus, Plaintiff should be awarded attorney's fees.

(Am. Mot. for New Trial at 1, Adv. Proc. No. 10-02062, ECF No. 70.) Debtor blamed his failure to submit evidence of his damages on Appellee's tardy discovery. Additionally, Debtor alleged that the court violated "the Rules" by failing to extend the discovery dates when it continued the trial. Debtor alleged that this failure caused him to be unable to gather his evidence. Based on all of this, Debtor moved for a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1).

Debtor's motion for return of property was extremely brief. He simply stated that because the court had found that Appellee willfully violated the stay and because Debtor had filed a motion for a new trial, he was entitled to return of the Camry. He offered no support for his position.

In his Emergency Motion for Temporary Injunctive Relief and Temporary Restraining Order, Debtor asked the court to enjoin Appellee from disposing of the Camry until all matters in the adversary proceeding were concluded. If the matter were to be appealed, Debtor asked the court to enjoin and restrain Appellee from disposing of the property during the pendency of the Appeal.

12

On September 2, 2011, the bankruptcy court entered an order denying all three of Debtor's post-trial motions. Addressing the motion for a new trial, the court analyzed the issue pursuant to Federal Rule of Civil Procedure 59(e) and determined that Debtor offered no grounds to support his request. The court stated that the proof Debtor alleged he did not have time to gather was evidence that was always within his control. This included proof regarding the costs of his alternate transportation and costs for his attorney advisors, although the court stated it was not offering an opinion as to whether Debtor would be entitled to collect attorney's fees as a *pro se* plaintiff. Since all evidence regarding Debtor's damages was always available to him, the court also stated that the amount of time Debtor had to conduct discovery was irrelevant to the issue.

As to Debtor's request for return of the vehicle, the court stated that Debtor offered no reasons or arguments in support of his request for the court to reconsider its ruling on that issue. Because the Camry was still property of the estate, the court reiterated its holding that Debtor was not entitled to return of the vehicle. Additionally, the court ruled that Debtor's request for an injunction prohibiting Appellee from disposing of the Camry was moot because Appellee had not sought relief from the stay. Because § 362(c)(1) provides that the automatic stay against property of the estate "continues until such property is no longer property of the estate," Appellee would have to seek relief from the stay before the Debtor could seek to enjoin any activity.

Debtor's timely appeal followed on September 13, 2011.

## IV.   DISCUSSION

### A.    Debtor's Standing to Appeal

The only issue raised by Appellee in its brief is Debtor's standing to bring this appeal. Appellee alleges that appellate standing is limited to "persons aggrieved" by a bankruptcy court order. Appellee is correct that a party's standing to appeal a bankruptcy court order is limited "to persons with a financial stake in the bankruptcy court's order. Thus, a party may only appeal a bankruptcy

court order when it diminishes their property, increases their burdens or impairs their rights."
*Harker v. Troutman (In re Troutman Enters., Inc.)*, 286 F.3d 359, 364 (6th Cir. 2002) (internal citations and quotation marks omitted). "To be considered a person aggrieved, an appellant must establish both an 'injury in fact as well as that the interest which he seeks to protect . . . is an interest which the Bankruptcy Act seeks to protect or regulate.' " *Hyundai Translead, Inc. v. Jackson Truck & Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 247 (6th Cir. 2009) (citing *In re The Harwald Co.*, 497 F.2d 443, 444 (7th Cir. 1974)). "These requirements are designed to limit standing to persons with a financial stake in the bankruptcy court's order." *Lyndon Prop. Ins. Co. v. Katz*, 196 Fed. App'x 383, 387 (6th Cir. 2006) (internal citations and quotation marks omitted). A chapter 7 debtor's standing to appeal bankruptcy court orders is even more limited to orders that affect disposition of property of the estate, the administration of his case, or the terms of his discharge. *Monus v. Lambros*, 286 B.R. 629, 634 (N.D.Ohio 2002).

However, there are causes of action which the chapter 7 debtor has standing to pursue and, therefore, standing to appeal. Section 362(k) provides that "an individual injured by any willful violation of a stay" may move for an award of actual damages and, in appropriate cases, punitive damages. 11 U.S.C. § 362(k). Clearly, a debtor is a designated beneficiary of the automatic stay. *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999). Not only does a chapter 7 debtor have standing to bring an action for a willful violation of the automatic stay, but he also has a private cause of action for doing so. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000). Additionally, an award of damages for a violation of the automatic stay is not property of the estate as defined in 11 U.S.C. § 541. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009) ("Congress could have easily included § 362(k) claims under the 'property of the estate' umbrella.").

Unlike § 362(k), the Bankruptcy Code does not provide debtors with a private cause of action for seeking redress of violations of the § 524 discharge injunction. *Pertuso*, 233 F.3d at 421. That failure, however, does not deprive the debtor of standing to bring such an action. " '[V]iolation of the discharge injunction does expose a creditor to potential contempt of court . . . . If the contempt

14

is established, the injured party may be able to recover damages as a sanction for contempt.' "
*Motichko v. Premium Asset Recovery Corp. (In re Motichko)*, 395 B.R. 25, 29-30 (Bankr. N.D. Ohio
2008) (citing *Lohmeyer v. Alvin's Jewelers (In re Lohmeyer)*, 365 B.R. 746, 749-50 (Bankr. N.D.
Ohio 2007)); *See also Michalski v. Coulson (In re Michalski)*, 452 Fed. App'x 656, at *3, n.2 (6th
Cir. 2011).

Accordingly, it is clear that Debtor in the case presently before the Panel has standing to
appeal the order of the bankruptcy court granting in part and denying in part his complaint for
damages for Appellee's alleged violation of the automatic stay and the discharge injunction. Debtor
had standing to bring the original action. Because the bankruptcy court did not award Debtor
damages for Appellee's willful violation of the stay or find that Appellee had violated the discharge
injunction, Debtor is a person aggrieved by that order. Debtor, therefore, has standing to bring this
appeal.

**B.    11 U.S.C. § 362(k)(1)**

The focus of this appeal is the bankruptcy court's failure to award damages. Section
362(k)(1) provides that "an individual injured by any willful violation of a stay . . . shall recover
actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover
punitive damages." 11 U.S.C. § 362(k)(1). An individual seeking damages under § 362(k) must
prove, by a preponderance of the evidence, that damages were "proximately caused by and
reasonably incurred as a result of the violation of the automatic stay." *Grine v. Chambers (In re
Grine)*, 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010) (citing *Archer v. Macomb Cnty. Bank*, 853 F.2d
497 (6th Cir. 1988)). A debtor must be able to demonstrate the amount of damages incurred with
a reasonable degree of certainty and must support this claim with evidence. *Perrin*, 361 B.R. at 856;
*In re Pawlowicz*, 337 B.R. 640, 645-46 (Bankr. N.D. Ohio 2005). A bare statement by the debtor
that he incurred damages without some form of supporting evidence as to the amount will not satisfy
the evidentiary requirements of § 362(k). *Ball v. A.O. Smith Corp.*, 321 B.R. 100, 110 (N.D.N.Y.
2005).

In addition to actual damages, § 362(k) also provides that a party injured by a willful violation of the automatic stay may, "in appropriate circumstances," recover punitive damages. 11 U.S.C. § 362(k)(1). A party seeking punitive damages under § 362(k) must demonstrate that the creditor's conduct was "egregious, vindictive, or intentionally malicious." *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004). Although this standard does not require a movant to prove a creditor acted with any "overt wrongful intent," the moving party must be able to make "a strong showing that the creditor acted in bad faith or otherwise undertook their actions in reckless disregard of the law." *Id.* If, however, the proof shows that the creditor acted with a "good faith belief that subsection (h) [of § 362] applies to the debtor, the recovery under" § 362(k) is limited to actual damages. 11 U.S.C. § 362(k)(2). As with compensatory damages, the party seeking punitive damages under § 362(k)(2) has the burden of proving he is entitled to such. *Malicki v. Bernstein (In re Bernstein)*, 447 B.R. 684, 704-05 (Bankr. D. Conn. 2011).

Debtor failed to present evidence sufficient to support his claim for damages. Debtor argues that his testimony and Wiley's testimony that substantial expenses were incurred is sufficient evidence. Neither of them, however, ever provided the bankruptcy court with a dollar amount for these expenses. As the party seeking recovery under § 362(k), Debtor had the burden of requesting damages in a certain amount and of supporting that claim with evidence. Debtor failed to satisfy either prong of that burden.

Debtor asserts that, in failing to extend the discovery deadlines, the court prevented him from submitting evidence of his damages. Debtor's arguments about the bankruptcy court's denial of his request to extend the discovery deadlines are without merit. The proof Debtor needed to support his claim for damages was always within his control. Wiley testified that they had to rent cars on a number of occasions and that they had to pay friends and family gas money for rides to Wiley's doctor's appointments. Presumably, from the date the Camry was repossessed Debtor was incurring expenses for alternate transportation. Receipts for these expenses would have been in Debtor's possession or control. In fact, at trial, Wiley testified that he did have invoices, but that he did not have them with him in court. (July 28, 2011 Tr. of Hr'g at 29). Debtor's failure to present these proofs at trial was not the result of the bankruptcy court's refusal to extend deadlines.

16

In addition, Debtor asserts that the bankruptcy court erred in not awarding attorney's fees. Without offering an opinion on whether attorney's fees are recoverable for a *pro se* debtor, Debtor's request for such fails. First, Debtor submitted no proof of these expenses such as an attorney's certification showing the billable rate, the number of hours spent on the case and in what capacity work was done. Secondly, Debtor's request for attorney's fees is grossly unreasonable.

In awarding attorney's fees under § 362(k)(1), a court should determine whether the fee is reasonable based on the "customary compensation charged by comparably skilled practitioners" and whether the fee "bear[s] a reasonable relationship to the amount in controversy." *In re Russell*, 441 B.R. 859, 863 (Bankr. N.D. Ohio 2010). An attorney's fee of $20,000 for "advising" Debtor in a relatively simple and uncomplicated adversary proceeding is grossly unjustifiable. If this particular adversary proceeding did, in fact, require such an enormous amount of time, it is baffling that neither attorney appeared at the trial in this matter or entered a formal appearance. It seems even more odd that Debtor would work so closely with these "advisors" since one of the alleged advisors was the attorney he fired in his underlying bankruptcy case for filing the motion to redeem.

Pursuant to § 362(k)(2), a party is not entitled to recover punitive damages if "such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor." 11 U.S.C. § 362(k)(2). In the case currently before the Panel, Appellee argued that it repossessed the car after concluding that the automatic stay had terminated pursuant to § 362(h)(1). No evidence was presented, nor did the bankruptcy court find, that Appellee's reliance on § 362(h)(1) was in bad faith. Even if Appellee had not relied on § 362(h)(1), Debtor failed to produce any evidence that demonstrated Appellee acted egregiously, vindictively or with malice in repossessing the car. As the party seeking damages, however, Debtor carried the burden of proof on the issue of Appellee's behavior. *See Bivens*, 324 B.R. at 42 (a party seeking punitive damages under § 362(k) must demonstrate that the creditor's conduct was "egregious, vindictive, or intentionally malicious.").

The last error Debtor alleges the bankruptcy court made was its failure to schedule a post-trial hearing to determine the amount of damages. Debtor does not specify the authority for this post-

hearing opportunity. He simply says the "rules" allow it. Although oftentimes courts will find a party in contempt at one hearing and then continue the matter for a hearing on sanctions, there is nothing in the Federal Rules of Bankruptcy Procedure which require a court to do this. What the law does require is an opportunity for a plaintiff to present evidence on the issue of damages. *Vázquez Laboy v. Doral Mortg. Corp. (In re Vázquez Laboy)*, 647 F.3d 367, 375 (1st Cir. 2011).

In the case currently before the Panel, the bankruptcy court allowed Debtor an opportunity to provide evidence on the issue of damages. The bankruptcy court scheduled the matter for trial and issued a scheduling order which included numerous deadlines for the exchange and submission of evidence. From the beginning, the bankruptcy court made it crystal clear that the Debtor would have the opportunity to present evidence at the trial on the issue of damages. The Debtor's failure to do so was his fault and his alone.

In reviewing the record from the bankruptcy court as well as the briefs in this appeal, it is abundantly clear that the bankruptcy court did not err in declining to award Debtor any damages. Not only did Debtor fail to submit evidence of his actual damages to the court, but he failed to even offer an estimate of his damages at any time during the adversary proceeding. Even in his motion for a new trial, Debtor's only statement regarding his damages was his claim that his attorney's fees totaled over $20,000. Debtor fell far short of his burden of proof.

## C.    11 U.S.C. § 524

Section 524(a)(2) of the Bankruptcy Code provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any . . . debt [discharged under section 727 . . . of this title] as a *personal liability* of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) (emphasis added). Once a discharge is issued, subsections (2) and (3) of § 524(a) make permanent the protections afforded by § 362's automatic stay and prohibit a creditor from pursuing collection efforts against the debtor personally for debts that were discharged in the bankruptcy

18

proceeding. *Gunter v. O'Brien & Assocs. Co. LPA (In re Gunter)*, 389 B.R. 67, 71 (Bankr. S.D. Ohio 2008). "The purpose of § 524(a) is to afford a debtor a 'fresh start' by ensuring that a debtor will not be pressured in any way to repay a debt after it has been discharged." *Paglia v. Sky Bank (In re Paglia)*, 302 B.R. 162, 166 (Bankr. W.D. Pa. 2003).

Although the protections afforded by the § 524(a) discharge injunction are broad, they do not prohibit a creditor from enforcing its lien rights post-discharge. "[A] valid lien survives the discharge order, and a secured creditor may take any appropriate action to execute such a lien, except an *in personam* action against the debtor." *Braun v. Champion Credit Union (In re Braun)*, 152 B.R. 466, 470 (N.D. Ohio 1993). *See also Long v. Bullard*, 117 U.S. 617, 620, 6 S. Ct. 917, 918 (1886). As long as the creditor had a lien against the property prior to commencement of the case, any *in rem* proceedings they initiate against the property are not prohibited by the discharge injunction. *In re Lynch*, 187 B.R. 536, 548 (Bankr. E.D. Ky. 1995).

In this appeal, Debtor alleges that when Appellee's agent repossessed the Camry, the agent also sought recovery against Debtor personally. Wiley's testimony does not support Debtor's argument. Although Appellee's agent gave Wiley an approximate figure for the arrearage owed on the Camry, there is nothing in the record which indicates that the agent demanded payment of the money from Wiley or Debtor. Wiley did not testify that the agent stated he would forego repossession if Wiley paid him the past due amount. Wiley's testimony simply makes clear that the repossession agent answered Wiley's question as to why they were repossessing the Camry.

Debtor also argues that the bankruptcy court erred because "the property had equity at the time minus the alleged debt." (Br. of Appellant at 15). Whether debtor has equity in the Camry or not is irrelevant to the determination of whether Appellee violated the discharge injunction. The discharge injunction prohibits a creditor from taking any act to collect a debt as a personal liability from the debtor once the discharge is entered. 11 U.S.C. § 524(a)(2). Debtor presented no evidence that Appellee sought to collect any money from Debtor following his discharge. Its only act was the

enforcement of its *in rem* rights against the Camry. Accordingly, the bankruptcy court did not err in determining that Appellee's repossession of the Camry did not violate the discharge injunction.

## D.    Pre-trial Discovery Orders

Debtor alleges that the bankruptcy court also erred in failing to grant his requests for an extension of the discovery deadline and, in so doing, failed to take into consideration how Appellee's attorney's actions affected his ability to comply with the deadlines. A bankruptcy court has wide discretion in determining whether a request for an extension of the discovery deadline is warranted. *Official Unsecured Creditors Comm. v. Ampco-Pittsburgh Corp. (In re Valley-Vulcan Mold Co.)*, 5 Fed. App'x 396, 400-01 (6th Cir. 2001). Orders relating to such matters should only be reversed on appeal if they result in "substantial prejudice" to the non-prevailing party. *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994). Federal Rule of Civil Procedure 16(b)(4), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7016, provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) When reviewing a denial of a request to extend the discovery deadlines, a court should consider:

> (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests.

*Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). "The overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery." *Id.* A court does not abuse its discretion in denying a motion to extend the discovery deadlines where the requesting party had "ample time and opportunity for discovery." *Valley-Vulcan Mold Co.*, 5 Fed. App'x at 400-01. Additionally, "failure to have the witness present or a transcript available at the scheduled hearing was a failure in proof or preparation, not a failure to discover evidence." *Wellman v. Salt Creek Valley Bank (In re Wellman)*, No. 05-8064, 2006 WL 189985, at *4 (B.A.P. 6th Cir. Jan. 26, 2006).

20

The bankruptcy court issued its initial scheduling order in the adversary proceeding on February 16, 2011. Pursuant to that order, the parties had until April 18, 2011, to complete discovery and until June 3, 2011, to exchange exhibits. The court scheduled a trial in the matter for June 30, 2011. On March 23, 2011, the bankruptcy court accelerated the trial from June 30, 2011, to May 11, 2011, and the date for exchange of exhibits from June 30, 2011, to April 29, 2011. The court did not alter the discovery deadline. On April 18, 2011, Debtor filed a motion to extend the discovery deadline. The only reason offered by Debtor for extending the deadline was the lack of cooperation from Appellee's attorney. Debtor did not identify what particular requests, if any, counsel for Appellee had failed to answer. For this reason, the bankruptcy court denied Debtor's motion to extend the deadlines without prejudice on April 25, 2011.

Debtor again requested an extension of the discovery deadlines during the May 26, 2011 pre-trial conference. Again, the bankruptcy court denied Debtor's request. The court did, however, tell Debtor that he was free to subpoena whatever witnesses he deemed necessary for the trial.

A review of the record in this appeal indicates that there was only one issue for which the evidence was lacking: the issue of damages caused by Appellee's willful violation of the automatic stay. Although Debtor argued that Appellee's counsel had not timely responded to his discovery requests, there is nothing Appellee could have provided to Debtor which would have offered any proof on the issue of Debtor's damages.

A review of the relevant factors as they apply to the facts in this appeal indicate that the bankruptcy court did not abuse its discretion in denying Debtor's request to extend the discovery deadlines. The evidence Debtor needed to succeed on his claim for damages was not something discovery from Appellee would have produced. Debtor had the necessary records within his control at all times in the case. He had over five months to prepare for the July 28, 2011 trial and to assemble the evidence necessary for the trial. If, in fact, Debtor had "attorney advisors" during the entire pendency of his adversary proceeding, they should have been more diligent in advising Debtor about what documents he needed to assemble and how to comply with the relevant deadlines.

21

## E.    Post-Trial Motions

The last error Debtor alleges the bankruptcy court made was the denial of his post-trial motions for a new trial, for return of property and for temporary injunctive relief and a temporary restraining order.  The Debtor's post-trial motions are essentially requests to alter or amend and/or reconsider the previous orders from the bankruptcy court pursuant to Federal Rule of Civil Procedure 59(e).

"[I]n non-jury cases, new trials are typically ordered under Rule 59(a) only when there has been a manifest error of law or a mistake of fact." *Crehan v. Ying Ly (In re Ying Ly)*, 350 B.R. 757, 759 (Bankr. W.D. Mich. 2006) (citing *Ball v. Interoceanica Corp.*, 71 F.3d 73, 76 (2d Cir.1995)). "A motion under Rule 59 is not, however, 'intended to provide the parties an opportunity to relitigate previously-decided matters or present the case under new theories[,]' and '[t]he burden of demonstrating the existence of a manifest error of fact or law rests with the party seeking reconsideration.' " *King v. Spivey (In re Spivey)*, Bankr. No. 08-35118, Adv. No. 09-3028, 2010 WL 5154397, at *3 (Bankr. E.D. Tenn. Dec. 14, 2010) (citing *In re Nosker*, 267 B.R. 555, 564–65 (Bankr. S.D. Ohio 2001)).

Similarly, a motion to alter or amend under Federal Rule of Civil Procedure 59(e) may be granted "if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999)). However, a movant "cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 395 (6th Cir. 2007).

A review of the facts in this appeal do not indicate that the bankruptcy court abused its discretion in denying Debtor's post-trial motions.  Debtor did not demonstrate any grounds for relief in his three post-trial motions nor did Debtor sufficiently assert any basis for reversal of the

bankruptcy court's September 2, 2011 order denying his motions. As discussed *supra*, the bankruptcy court did not make any manifest errors of law or mistakes of fact throughout Debtor's case. The bankruptcy court did not abuse its discretion in denying Debtor's motion to extend the discovery deadlines nor did the court err in refusing to award Debtor any damages for Appellee's willful violation of the stay. Debtor failed to demonstrate how extending the relevant deadlines would have assisted him in proving his damages. The evidence he needed to carry his burden of proof on that issue was always within his control. The bankruptcy court also properly determined that the Camry was property of the Debtor's estate and that the Debtor had no interest in the vehicle which would entitle him to return of the Camry. The bankruptcy court properly set forth the law as to each issue in the adversary proceeding and its conclusions of law were sound. In each of its rulings, the bankruptcy court set forth detailed reasoning for its determinations. There is nothing in any of the bankruptcy court orders or memorandum opinions which indicate that the court abused its discretion or made an error of law or mistake of fact. Therefore, there is no basis for reversing the bankruptcy court's denial of Debtor's post-trial motions.

## V.   CONCLUSION

For the foregoing reasons, the Panel affirms (1) the bankruptcy court's August 22, 2011 judgment dismissing the debtor's claim for violation of the discharge injunction pursuant to 11 U.S.C. § 524 and finding that while HSBC wilfully violated the automatic stay pursuant to 11 U.S.C. § 362(k), debtor was not entitled to damages; (2) the bankruptcy court's April 25, 2011 order denying debtor's motion to extend the discovery deadlines without prejudice; and (3) the September 2, 2011 order denying debtor's motions for a new trial, for return of property, and for temporary injunctive relief and a temporary restraining order.